1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN QUINTERO, et al., | Case No. 3:13-cv-00008-MMD-VPC |
| Plaintiffs, | SCREENING ORDER |
| v. | |
| JACK PALMER, et al., | |
| Defendants. | |

This prisoner civil rights action comes before the Court for initial review under 28 U.S.C. § 1915A.

I.    **SEVERANCE**

In conducting initial review under § 1915A, the Court addresses at the outset the question of whether this action should proceed forward as a single action by multiple plaintiffs.  The manner in which all remaining requests for relief, including the pauper applications, are handled follows from that initial determination.  The Court, accordingly, considers whether severance is warranted pursuant to Rule 21 of the Federal Rules of Civil Procedure.

The Court has been presented with: (a) a complaint purporting to assert claims on behalf of John Quintero, Dirk Klinke, and Kevin Pope, but which is signed only by Quintero; and (b) a separate pauper application for each putative plaintiff.

The complaint makes the following allegations.

1   Count I alleges that defendant officials at the Northern Nevada Correctional
2   Center (NNCC) have restricted the free exercise of religion in violation of the First
3   Amendment and the Religious Land Use and Institutionalized Persons Act of 2000
4   (RLUIPA).  According to the allegations of the complaint,[1] Catholic inmates were able to
5   engage in group rosary prayer in the NNCC prison chapel up until the fall of 2011.  At
6   that time, the warden instructed the chaplain to prohibit all inmate run services in the
7   chapel. This action precluded group rosary prayer as opposed to individual rosary
8   prayer in an inmate's cell. According to the complaint, rosary prayer is not an
9   exclusively private devotion under the Catholic faith.  When Quintero inquired initially,
10  he was advised that the change was a temporary change for security reasons.  The
11  change thereafter became permanent.   The complaint alleges that "land based"
12  religions – such as Native American religions as well as pagan or witchcraft religions –
13  are unaffected because followers can meet in their separate sacred space at any time
14  during operational hours.  Alleged "indoor religions," such as Catholics, are affected,
15  however.   The complaint seeks, *inter alia*, to enjoin the practice of barring chapel
16  access to inmate run services.

17  Count II alleges that NNCC defendant officials have restricted the free exercise
18  of religion "and use of the U.S. mail" in violation of the First Amendment and RLUIPA.
19  Quintero alleges, *inter alia*, that he was threatened with disciplinary sanctions for writing
20  a letter to the local Catholic bishop that he also copied to the prison chaplain as well as
21  a lay Catholic minister and deacon.

22  Count III also alleges that NNCC defendant officials have restricted the free
23  exercise of religion in violation of the First Amendment and RLUIPA.  Quintero alleges,
24  *inter alia*, that: (a) a Latin language book and compact disc that he ordered for theology

25

26  [1]For purposes of the present screening review, all nonconclusory allegations of
27  actual fact are accepted *arguendo* as true.  No statement summarizing the allegations of the complaint or any other paper submitted constitutes a finding by this Court that the statement in fact is true.  The Court merely is summarizing the allegations made in the
28  papers submitted herein.

2

1    study and participation in Latin language prayer were destroyed; and (b) entries
2    associated with his product order and the destruction of the items in his inmate files also
3    were destroyed.

4         Count IV also seeks to assert a free exercise claim under the First Amendment
5    and RLUIPA.  Count IV alleges that Dirk Klinke was denied access to Catholic
6    sacraments during a two-month stay in the medical facility at NNCC from January 17,
7    2011, to March 18, 2011.  The count further alleges that Klinke's "kites," *i.e.* written
8    inmate requests, regarding the issue were lost or destroyed.  Count IV additionally
9    alleges that correctional administrative regulations are impermissibly vague regarding
10   religious access in administrative segregation, austere housing, disciplinary
11   segregation, protective segregation, intake, and disruptive group segregation/close
12   custody. There are no allegations of actual fact in Count IV suggesting that Klinke,
13   much less the other two putative plaintiffs, have standing to raise any issue regarding
14   religious access in these myriad distinct custody classifications.

15        Count V alleges a denial of freedom of speech in violation of the First
16   Amendment.  Quintero alleges that his First Amendment rights were violated when a
17   mail room policy was adopted not permitting the use of return-address stickers on mail
18   from family members.  He alleges that mail from his step-mother was returned because
19   it had a return address sticker on the mailing.

20        Count VI seeks to assert a free exercise claim under the First Amendment and
21   RLUIPA.  Quintero challenges the prison mail room's rejection of his subscriptions for
22   two Catholic periodicals.

23        Finally, Count VII also seeks to assert a free exercise claim under the First
24   Amendment and RLUIPA.  Count VII alleges, *inter alia*, that Kevin Pope is a practitioner
25   of Siddha Yoga and that access has been denied to the NNCC chapel for inmate-run
26   practice of Siddha Yoga.

27   ///

28   ///

1  Subsequent to the filing of the complaint, Quintero has written a letter[2] to the

2  Clerk. Quintero asserts that it has become "absolutely impossible" for him to

3  communicate, as the purported "writing plaintiff," with Klinke and Pope, due to prison

4  security level changes.  He requests that the Court order the prison law librarian to

5  serve Klinke and Pope with notices.  Quintero states that he believes that Klinke is in

6  "Level I," but he does not know Pope's location.

7  Prisoners seeking to bring a civil action *in forma pauperis* are subject to the

8  restrictions and requirements of the Prisoner Litigation Reform Act (PLRA).  One such

9  requirement is set forth in 28 U.S.C. § 1915(b)(1), which states in pertinent part that "if a

10  prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be

11  required to pay the full amount of the filing fee."  Accordingly, while a prisoner plaintiff

12  granted pauper status may be allowed to pay only an initial partial filing fee, he

13  ultimately will be required to pay the full filing fee through installment payments drawn

14  from his inmate trust account.

15  The three federal circuits that have directly considered the issue all have agreed

16  that this statutory requirement of full payment of the filing fee remains applicable when

17  multiple prisoners seek to join as co-plaintiffs in a single action, such that each prisoner

18  still must pay the full filing fee.  *See Hagan v. Rogers*, 570 F.3d 146, 155-56 (3rd Cir.

19  2009); *Boriboune v. Berge*, 391 F.3d 852, 855-56 (7th Cir. 2004); *Hubbard v. Haley*, 262

20  F.3d 1194, 1197-98 (11th Cir. 2001).[3]

21  The circuits differed, however, as to the appropriate handling of the actions

22  thereafter, with regard to joinder.

23  ///

24

25  [2]Plaintiff may not communicate with the Court or Clerk by letter.  If plaintiff wishes to seek relief from the Court, he must file a captioned motion complying with Rule 7(b)

26  of the Federal Rules of Civil Procedure that, *inter alia*, states the relief sought and the grounds therefor. The Court does not take action based on letters, and neither the Court

27  nor Clerk engage in correspondence with litigants.

28  [3]*But cf. Tailey-Bey v. Knebl*, 168 F.3d 884, 886-87 (6th Cir. 1999)(apportioning costs between two prisoner plaintiffs).

In *Hubbard*, the Eleventh Circuit affirmed a district court order dismissing a multi-plaintiff action and directing that multiple separate actions instead be opened by the clerk.  The appellate panel held that separate suits were required in order to satisfy the requirement under the PLRA that each prisoner pay a full filing fee.  The panel rejected the plaintiffs' argument that permissive joinder of the multiple plaintiff prisoner claims was authorized under Rule 20. The panel held that "to the extent that the Rules Enabling Act, as expressed in Rule 20, actually conflicts with the PLRA, we hold that the statute repeals the Rule."  262 F.3d at 1198.

In *Boriboune*, the Seventh Circuit reversed a district court order that similarly had dismissed a multi-plaintiff prisoner action without prejudice.  The panel agreed with the Eleventh Circuit that each plaintiff must pay a full filing fee pursuant to the PLRA.  The panel did not agree, however, that the PLRA repealed Rule 20 by implication. The Seventh Circuit held that district courts within that circuit must accept complaints filed by multiple prisoners if the criteria for permissive joinder are satisfied but then must apply the PLRA fee payment requirements to each plaintiff separately.

In *Hagan*, the Third Circuit reversed a district court order that had dismissed all but one of the multiple plaintiff's claims with leave to file individual complaints, on the basis that the PLRA barred permissive joinder under Rule 20. In *Hagan*, fourteen inmates in the Adult Diagnostic & Treatment Center in Avenel, New Jersey, had filed a joint complaint alleging that prison officials had failed to contain and treat a serious and contagious skin condition. The panel agreed with the Eleventh and Seventh Circuits that each prisoner plaintiff must pay the full filing fee pursuant to the PLRA.  On the question of joinder, the Third Circuit agreed with the Seventh Circuit that the PLRA did not impliedly repeal Rule 20, thus disagreeing with the Eleventh Circuit.  570 F.3d at 152-56.

The *Hagan* panel further discussed the district court's reliance generally upon difficulties in multi-plaintiff prisoner litigation as a factor rendering joint pursuit of the litigation impracticable. The practical difficulties canvassed by the district court included:

1  (a) logistical difficulties in each plaintiff reviewing the same unchanged contemplated

2  filing and signing each paper filed, as required by the federal rules; (b) difficulties in

3  conferring jointly regarding the litigation in the prison setting, even within a single

4  institution, with concomitant efforts by the inmates to compel prison authorities to

5  override security and housing decisions on account of the litigation; (c) the prospect that

6  co-plaintiffs could be transferred to other facilities during the possible multi-year course

7  of the litigation, making joint action even more problematic; and (d) the possibility of

8  coercive action between inmates with regard to joint litigation. The Third Circuit

9  concluded that the district court's reliance upon such factors was tantamount to a

10 holding that prisoners do not constitute "persons" under Rule 20.  So construed, the

11 panel held that the district court's reliance on these factors constituted error.  The panel

12 noted that the facility in question was only a "relatively small facility" with 600 inmates,

13 that all of the plaintiffs had signed all of the filings, and that nothing in the record

14 suggested that joint litigation would not be manageable.  570 F.3d at 156-57 & n.4.

15      At the district court level, decisions from a number of federal district courts,

16 including from this district, have come to the conclusion that severance – under Rule 21

17 – often is appropriate in multi-plaintiff prisoner cases, given the practical realities of

18 pursuing joint prison litigation within a large state prison system.  *See, e.g., Jarvis v.*

19 *Nye County Detention*, No. 2:08-cv-01407-PMP-PAL, dkt. no. 14 (D. Nev. Feb. 6, 2009);

20 *Davis v. United States*, 2007 WL 2225791 (E.D. Cal. July 31, 2007); *see also*

21 *Hershberger v. Evercom, Inc.*, 2008 WL 45693 (D. Kan. Jan. 2, 2008)(similar).

22      Under Rule 21, "the court may at any time, on just terms, add or drop a party"

23 and "may also sever any claim against a party."  Severance under Rule 21 is not limited

24 solely to curing misjoinder of parties, given that the rule explicitly provides that the court

25 may sever "any" claim against a party.[4]  Even if the standard for permissive joinder

26 _____

27 [4]*See, e.g., Safeco Ins. Co. of America v. White House, Tenn.*, 36 F.3d 540, 545-46 (6th Cir. 1994); *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983); *Spencer, White and Prentis Inc. of Connecticut v. Pfizer, Inc.*, 498 F.2d 358, 361 (2d Cir. 1974);

28 *Sporia v. Pennsylvania Greyhound Lines, Inc.*, 143 F.2d 105 (3rd Cir. 1944); *CVI/Beta (fn. cont...)*

6

under Rule 20(a) is satisfied, district courts have the discretion to refuse joinder and sever claims in the interests of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.[5]  Claims may be severed if such action will serve the ends of justice and further the prompt and efficient disposition of the litigation.[6]  A district court has broad discretion with regard to severance of claims under Rule 21.[7]

In the present case, the Court neither makes nor need make a categorical holding for all prisoner cases to determine that severance is appropriate under Rule 21 in *this* case.[8]  The Court need not, and does not, hold that the PLRA repeals Rule 20.

---

(*…fn. cont.*)

*Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F.Supp. 505, 506 (D. Md. 1995); *see also Acevedo-Garcia v. Monroig*, 351 F.3d 547, 560 n.5 (1st Cir. 2003) (noting prevailing rule); *see generally* 7 C. Wright, *et al.*, *Federal Practice & Procedure: Civil* § 1682, at 474 (3d ed. 2001) ("The application of Rule 21 has not been limited to cases in which parties were erroneously omitted from the action or technically misjoined contrary to one of the party joinder provisions in the federal rules."); 4 J. Moore, *Moore's Federal Practice*, § 21.02, at 21-3 (3d ed. 2013) ("The text of the Rule does not, however, limit its operation to such situations [of improper joinder of parties].  The courts have properly concluded that they may issue orders under Rule 21 even in the absence of misjoinder or nonjoinder of parties, to structure a case for the efficient administration of justice . . . .").

[5]*E.g., Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-22 (5th Cir. 2010); *cf. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (even when the requirements for permissive joinder under Rule 20(a) are met, a district court must examine whether joinder would comport with principles of fundamental fairness or would result in prejudice to either side).

[6]*E.g., CVI/Beta Ventures, Inc.*, 896 F.Supp. at 506.

[7]*See, e.g., Acevedo*, 600 F.3d at 522 ("wide discretion"); *see also Coleman*, 232 F.3d at 1297 ("broad discretion," in a Ninth Circuit case decided under Rule 20(b)); *see generally* 7 C. Wright, *et al.*, *Federal Practice & Procedure: Civil* § 1689, at 515-16 (3d ed. 2001) ("Questions of severance are addressed to the broad discretion of the district court."); 4 J. Moore, *Moore's Federal Practice* § 21.02, at 21-10 (3d ed. 2013) ("The Rule vests great discretion in the court in determining whether . . . to order severance.").

[8]The Court has assumed, *arguendo*, that the requirements for permissive joinder under Rule 20(a) are satisfied in this case.  The Court makes this *arguendo* assumption based upon the premise that all three plaintiffs have standing to pursue Count I despite the references to Quintero only.  The Court has assumed *arguendo* in particular that the plaintiffs' Count I claims: (a) arise out of the same occurrence or series of occurrences involved in the banning of inmate-led indoor services in the chapel in which all three plaintiffs otherwise would participate in one fashion or another; and (b) raise a common question of law as to whether the challenged action violates the First Amendment and RLUIPA.  That said, the complaint asserts a number of claims that appear to concern only an individual plaintiff vis-à-vis having standing to pursue the claim.  Counts II, III, V

(*fn. cont...*)

1    The Court need not, and does not, hold that prisoners are not "persons" under Rule 20.

2    And the Court need not, and does not, hold that permissive joinder of multiple plaintiffs

3    in all prisoner litigation whatsoever is impractical without exception.

4         In the present case, practical difficulties that so often have been encountered in

5    the past in joint prison litigation in the large Nevada state prison system already have

6    become manifest.  From the very outset, the Court was presented with a complaint

7    signed by only one plaintiff, on the erroneous premise that the complaint need be

8    signed only by a purported "writing plaintiff."  There is no such entity under federal civil

9    practice, and each plaintiff in a multi-party *pro se* case must sign each paper submitted.

10   If one *pro se* party instead signs for the others, he then engages in the unauthorized

11   practice of law, as only an attorney at law may sign a filing on behalf of another.

12   Accordingly, even after allowing for the fact that each plaintiff submitted a pauper

13   application, it is not entirely clear at this point in this case that each plaintiff in fact

14   authorized the pursuit of the claims and allegations actually presented in the complaint

15   submitted.

16        Moreover, Quintero now maintains that it has become "absolutely impossible" for

17   him to communicate with Klinke and Pope due to prison security level changes.

18   Quintero is not even certain where the other two inmates are in the facility.  It therefore

19   will be exceedingly difficult, if not well-nigh impossible, to: (a) efficiently correct the

20   signature deficiency in the original complaint within the context of a multi-plaintiff case

21   _____

*(…fn. cont.)*

22   and VI all allege underlying factual circumstances involving only Quintero.  Count IV
     initially alleges factual circumstances involving only Klinke, prior to conclusorily
23   asserting a broad array of claims as to which it would appear probable that none of the
     plaintiffs have standing. Finally, Count VII pertains at least directly only to Pope,
24   although the count perhaps ties in indirectly to the limitations on chapel use for "indoor
     religions" alleged in Count I.  The mere fact that all of these diverse principally individual
25   claims involve claims under the First Amendment and/or RLUIPA would appear to be
     insufficient to tie the claims together sufficiently for multi-party permissive joinder under
26   Rule 20(a), separate and apart from the presence of Count I. Joinder of multiple
     unrelated claims by a *single* plaintiff of course is governed by the far more expansive
27   provision in Rule 18.  All such joinder, however, would appear to be subject to possible
     severance under Rule 21 where such severance is in the interests of justice and the
28   efficient conduct of the litigation.

as opposed to severed actions; and (b) thereafter efficiently file further multi-plaintiff papers in a joined action given that the plaintiffs are not in a position to effectively confer with one another, review proposed papers, and sign the papers for filing.

Northern Nevada Correctional Center is a multi-purpose facility that is nearly three times larger than the small, apparently single-purpose facility involved in *Hagan.* One of the multiple purposes served by NNCC is that it functions as the intake center for the northern region of the state. At any given time, inmates therefore may be subject to any one of a number of widely varying classification levels within that single facility alone. Inmates further may be transferred from NNCC to any one of five other correctional facilities for males across the state, over and above numerous conservation camps, all together collectively housing nearly 12,000 inmates. It is the Court's experience that such transfers can and do happen frequently over the course of the extensive ongoing prisoner litigation in this district, a circumstance that, of course, is compounded where more than one plaintiff is involved.[9]

The Court need not wait another two years into this case to find that the practical difficulties that already have been manifesting themselves essentially from day one of the case make joint pursuit of this matter in the interests of neither justice nor efficiency. Ordering the prison law library to send copies of mailings from this Court to all three plaintiffs will not address the practical difficulties identified herein. Nor is the Court inclined on the current record to second-guess security and housing decisions made by correctional officials in running a large statewide prison system solely because multiple inmates have joined in a lawsuit, at least with respect to the particular assemblage of claims raised in this litigation.

Severance not only will not prejudice the plaintiffs but further likely will benefit each plaintiff, given the practical difficulties that already have arisen herein. Severance

---

[9]For the particulars about the prison system, the Court takes judicial notice of the content on the state corrections department's website, at http://www.doc.nv.gov/ , under "Facilities" as well as under "Statistics" under "About NDOC."

9

will not prevent or impair their pursuit of the claims and relief sought in the joint action instead in separate actions. Severance will mitigate rather than cause delay in addressing their claims.

On the papers filed and in the circumstances presented in the instant case, the Court therefore finds that the claims filed by the multiple plaintiffs should be severed into separate actions pursuant to Rule 21, under the terms and conditions set forth at the end of this order.

## II.    SCREENING

The Court thereupon turns to initial review of Quintero's claims, only.

When a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. § 1915A(b).

In considering whether a plaintiff has stated a claim upon which relief can be granted, all material factual allegations in the complaint are accepted as true for purposes of initial review and are to be construed in the light most favorable to the plaintiff. *See, e.g., Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).  However, mere legal conclusions unsupported by any actual allegations of fact are not assumed to be true in reviewing the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 (2009). That is, conclusory assertions that constitute merely formulaic recitations of the elements of a cause of action and that are devoid of further factual enhancement are not accepted as true and do not state a claim.  *Id.*

///

///

///

///

Further, the factual allegations must state a plausible claim for relief, meaning that the well-pleaded facts must permit the court to infer more than the mere possibility of misconduct:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

> . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678.

Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Quintero's claims are described in greater detail, *supra*, at 1-3 & 7 n.8.

Applying the foregoing standards, Counts I and II state claims under the First Amendment and RLUIPA.

Count III does not state a claim upon which relief may be granted. Plaintiff refers within the body of the count to an alleged deprivation of procedural due process. However, an allegedly illegal loss or destruction of inmate property does not give rise to a procedural due process claim, given the availability of state post-deprivation remedies. *See Hudson v. Palmer*, 468 U.S. 517, 528 n.8 & 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327(1986); N.R.S. 73.010; N.R.S. 41.031; N.R.S. 209.243. Otherwise, merely because the plaintiff planned to use the property – here, a Latin  language instructional book and compact disc – for religious-related study does not elevate a simple loss of property claim into a viable claim under the First Amendment or RLUIPA for a denial of

religious freedom.  Nor does any alleged "destruction of government property" vis-à-vis any alleged failure to properly maintain plaintiff's inmate records give rise to any viable constitutional claim.  The Constitution does not authorize the federal courts to oversee every jot and tittle of the minutiae of prison life, down to the accuracy and completeness with which records are maintained concerning a lost or destroyed mail order for a language book and CD.

Count IV is a severed claim pertaining to plaintiff Klinke.  To the extent that Count IV seeks to assert claims regarding religious access in a multitude of distinct classification levels, Count IV does not reflect that plaintiff Quintero has standing to raise such issues essentially as to every classification level at the facility.

Count V, read very liberally at this juncture, states a claim upon which relief may be granted under the First Amendment.

Count VI states a claim upon which relief may be granted under the First Amendment and RLUIPA.

Count VII is a severed claim pertaining to plaintiff Pope.

All claims seeking to pursue class action relief will be denied.  A *pro se* litigant may not maintain a class action because he has no authority as a non-attorney to assert claims on the behalf of persons other than himself.  *See, e.g.,C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir.1987); *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966); *see also Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962).

**III.    CONCLUSION**

IT IS THEREFORE ORDERED that the Clerk of Court shall file the complaint.

IT IS FURTHER ORDERED that all claims of the co-plaintiffs hereby are SEVERED from one another, such that any and all claims by Klinke and Pope are

///

///

///

12

severed from this action and from each other, including, but not limited to, in particular Counts IV and VII, which no longer are pending in this action following the severance.[10]

IT IS FURTHER ORDERED that, accordingly, the Clerk: (1) shall open a separate new civil action for co-plaintiff Klinke and co-plaintiff Pope, for a combined total of two new civil actions under two new docket numbers; (2) shall assign the two new actions to the same district judge and magistrate judge as in the present action, shall generate the same internal P-flag assignment as in this action, and shall make appropriate adjustments to both case-assignment "wheels" to compensate for such assignment of the two new cases; (3) shall file a copy of the original complaint from this action, the corresponding application to proceed *in forma pauperis* (*e.g.,* file a copy of Pope's pauper application in the action opened for Pope), and this order in each such record, with any appropriate modification to show the new docket number; and (4) shall show that  co-plaintiffs Klinke and Pope are terminated as parties in the present action, such that plaintiff Quintero thereafter shall be the only plaintiff remaining as a current party plaintiff in this action.

IT IS FURTHER ORDERED that the Clerk shall send to Klinke and Pope in each such new action: (1) a copy of the standard paperwork indicating the docket number for the newly-opened action; (2) a copy of this order; (3) a copy of the original complaint in this matter, with any new docket number notation thereon; (4) two § 1983 complaint forms; and (5) the instructions for the form.

IT IS FURTHER ORDERED that Klinke and Pope shall have thirty (30) days from entry of a copy of this order in their severed individual action within which to file an amended complaint that complies with the requirements stated below.

---

[10]The Court expresses no opinion as to whether (a) claims by Klinke and Pope otherwise relate back to the claims in the complaint signed only by Quintero, or (b) administrative exhaustion by one former co-plaintiff satisfies the exhaustion requirement for the other plaintiffs.  The Court holds here only that the severance, in and of itself, is without prejudice to any relation back or exhaustion that otherwise would apply.  That is, relation back or exhaustion – if any – that was available prior to the severance remains available after the severance. *Cf. Russell*, 308 F.3d at 79 (no claim was before the court by the non-signing party).

IT IS FURTHER ORDERED that, in any amended complaint filed by Klinke and Pope respectively in his individual action, the plaintiff: (1) shall list that plaintiff in the caption of that action as the sole plaintiff in that action; (2) shall state, as to each constitutional violation alleged, the actual, personal, and individualized injury sustained by the individual plaintiff from specific incidents as a result of the alleged constitutional violation; (3) shall clearly title the amended complaint as an amended complaint by placing the word "AMENDED" immediately above "Civil Rights Complaint" on page 1 in the caption and shall place the docket number of his action, above the word "AMENDED" in the space for "Case No;" and (4) shall sign the complaint himself.  The Court informs all of the plaintiffs that under Local Rule LR 15-1 any amended complaint filed must be complete in itself without reference to prior filings.  Thus, any allegations, parties, or requests for relief from prior papers that are not carried forward in an amended complaint no longer will be before the Court in that action. The Court will screen any claims by Klinke and Pope only after they file an individually signed amended complaint in their own individual actions.

IT IS FURTHER ORDERED that in each such action, if the individual plaintiff fails to fully and timely comply with all requirements of this order, that plaintiff's action will be dismissed without further advance notice.

IT IS FURTHER ORDERED that, in the present action: (a) Count III is DISMISSED without prejudice for failure to state a claim upon which relief may be granted; (b) all claims for class relief are DISMISSED; and (c) Counts IV and VII are SEVERED from this action and/or fail to state a claim upon which relief may be granted to plaintiff Quintero. The only claims that remain in this action are claims by Quintero only under Counts I, II, V and VI.

IT IS FURTHER ORDERED that:

1.   A decision on Quintero's application (dkt. no. 1) to proceed *in forma pauperis* is DEFERRED.

///

14

2.     This action is STAYED for ninety (90) days to allow plaintiff and defendant(s) an opportunity to settle their dispute before an answer is filed or the discovery process begins.  During this ninety-day stay period, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery.  The Court will decide whether this case will be referred to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order.  Regardless, on or before ninety (90) days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior the end of the 90-day stay. If the parties  proceed with this action, the Court then will issue an order setting a date for the defendants to file an answer or other response.   Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

3.     "Settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve plaintiff's issues differently.   A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

4.     If the case does not settle, plaintiff will be required to pay the full $350.00 filing fee.  This fee cannot be waived.  If the plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account.  28 U.S.C. § 1915(b).  If plaintiff is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.   If plaintiff had sufficient funds when his pauper application was filed, he may not deplete such sufficient funds from his account prior to a ruling on the pauper application.

///

15

5.    The Clerk shall electronically serve a copy of this order and a copy of plaintiff's complaint on the Office of the Attorney General of the State of Nevada, attention Kat Howe.

6.    The Attorney General's Office shall advise the Court within twenty-one (21) days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the defendants for the purpose of settlement.  No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

DATED THIS 1st day of July 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6               UNITED STATES DISTRICT COURT

7                     DISTRICT OF NEVADA

8                            * * *

9   JOHN QUINTERO, et al.,              Case No. 3:13-cv-00008-MMD-VPC

10                                       REPORT OF THE OFFICE OF THE
                          Plaintiffs,    ATTORNEY GENERAL RE RESULTS OF
11                                              THE 90-DAY STAY

12        v.

13   JACK PALMER, et al.,
                          Defendants.
14
    ─────────────────────────────────

15  **NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS
    FORM.  THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**
16

17         On _____ *[the date of the issuance of the screening order]*, the

18  Court issued its screening order stating that it had conducted its screening pursuant to

19  28 U.S.C. § 1915A, and that certain specified claims in this case would proceed.  The

20  Court ordered the Office of the Attorney General of the State of Nevada to file a report

21  ninety (90) days after the date of the entry of the Court's screening order to indicate the

22  status of the case at the end of the 90-day stay.  By filing this form, the Office of the

23  Attorney General hereby complies.

24                            **REPORT FORM**

25  [Identify which of the following two situations (identified in bold type) describes the case,
    and follow the instructions corresponding to the proper statement.]
26

27  **Situation One: Mediated Case: The case was assigned to mediation by a court-
    appointed mediator during the 90-day stay.**  [If this statement is accurate, check
    **ONE** of the six statements below and fill in any additional information as required, then
28  proceed to the signature block.]

                                      1

_____ A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have reached a settlement, even if paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.)

_____ A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [enter date].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case: The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement, even if the paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney

2

General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                                    Print                                                          Signature

Address:          _____          Phone: _____

                       _____          Email: _____

                       _____

3